Opinion
COLE, P. J.
Appellant Wheeler was convicted of three counts of violating sections of the Los Angeles County Public Health Code (which code was later incorporated into the City of Los Angeles Municipal Code) and appellant Tufts was convicted of one such count. We affirm the convictions, except that of appellant Wheeler as to one of the charges, describing the evidence and sections so far as is necessary to answer the contentions made.
I
One of the counts involving appellant Wheeler alleged violation of section 819 of the public health code. The complaint alleges that she failed, refused and neglected to maintain a toilet fixture in a state of good repair, at 7046 Firmament Avenue, specifically alleging that the toilet drain was obstructed and the toilet was inoperative. The code section itself provides that fixtures and equipment in toilet rooms “shall be *Supp. 44 maintained in a state of good repair and free from dirt, filth, and corrosion.”
Wheeler argues that this provision is unconstitutionally vague, claiming that “state of good repair” is uncertain. We disagree, especially in the context pleaded here that the toilet was inoperative. Common sense is sufficient to tell anyone that a toilet which does not work is not in a state of good repair. Persons of ordinary intelligence should be able to understand this. We have rejected a similar challenge. (People v. Balmer (1961) 196 Cal.App.2d Supp. 874, 879-880 [17 Cal.Rptr. 612].) There we said “ ‘The words “good repair” have a well known and definite meaning. . . . They sufficiently inform the ordinary owner that his property must be fit for the habitation of those who would ordinarily use his dwelling.’ ” (Id., at p. 880.)
Appellant Wheeler next argues that the section is unconstitutionally overbroad, apparently on the basis that at one time or another toilets break down, or stop functioning. While it is true that unreasonable restrictions on one’s use of his property might violate substantive due process, we agree with the People’s argument that, properly construed with other sections of the county public health code, the section relates to conditions where public health is menaced. The record here shows that the toilet condition was not a mere transitory plumbing ailment. A health inspector testified that after finding the inoperative toilet he sent a notice to Wheeler regarding this and other violations, and indicating the required remedies. He returned to the premises and found no change in the condition and then set a hearing with notice to Wheeler, which she failed to attend. No due process violation occurred, because there is no unreasonable restriction on appellant’s use of her rental property. To the extent the overbreadth argument goes further and relates to the “filth and corrosion” language of the ordinance, Wheeler has no standing to raise the issue. She was not convicted on account of any “filth and corrosion.” This is not a First Amendment case. (See 5 Witkin, Summary of Cal. Law (8th ed. 1974) pp. 3282-3284.)
We are left to consider, with respect to this charge, one additional ground with respect to section 819. That section reads in full as follows: “Sec. 819. Toilet Rooms and Plumbing Fixtures. (8588, eff. 5-8-64) Every dwelling unit shall contain a lavatory and bathtub or shower. All lavatories, bathtubs, and showers of dwellings, house courts, hotels, motels, and apartment houses, shall be provided with hot and cold running water under pressure. All toilet rooms, bath and shower rooms, *Supp. 45 and utility rooms shall be adequately lighted and ventilated to the outside atmosphere. All such rooms and the fixtures and equipment therein shall be maintained in a state of good repair and free from dirt, filth, and corrosion.” At oral argument we asked counsel to file further letter briefs discussing who is criminally liable for violation of this section, a matter not originally raised by the parties. In reply, the People contend that reading the public health code as a whole, section 819 was intended to apply to both lessors and lessees of dwelling units. They cite section 817 of the code which states that with a certain exception “it shall be unlawful for any person to occupy or to cause or permit another person to occupy any dwelling unit. . .” which does not have at least one water closet. The People also refer to section 825 which prescribes certain conditions for sleeping quarters and states “No person shall occupy, rent, or lease, suffer or permit another person to use . . .” quarters not in compliance. Finally, reference is made by the People to section 827 which requires the consent of the owner or occupants for inspections in the nighttime hours. From these sections, and invoking the familiar principle that all of the parts of a statute should be construed together, the People argue that the scope of the ordinance is to prevent anyone from living or permitting another to live in premises that will endanger the health of the occupant. The People also state that if section 819 is ambiguous as to persons liable under its provisions the vagueness would not apply to lessors but only to tenants. The requirement of the section that toilet rooms be provided with hot and cold water and concerning lighting and ventilation, the People say, is a type of requirement that would be placed upon a landlord, while only the final requirement of the section relating to maintaining the premises in a state of good repair and free from dirt, filth and corrosion is “under the dual realistic control” of both tenant and landlord.
One preliminary problem with the People’s argument is that it can be argued with some conviction that the express description in sections 817, 825 and 827 of the persons liable for violating them is in stark contrast with the silence on this subject in section 819. Another problem is that the argument that only the last portion of the section is ambiguous strikes at the very part at issue here. If, as seems logical, a tenant is not likely to be in a position to see that each dwelling unit contains a lavatory and bathtub or shower, and if a tenant is not expected to be the one to provide the required hot and cold running water and to see that rooms are adequately lighted and ventilated to the outside atmosphere, then the only portion of section 819 applicable to tenants is the part which concerns us in this action.
*Supp. 46 The basic principles which control our decision are not in dispute. They are summarized in People v. McCaughan (1957) 49 Cal.2d 409, 414 [317 P.2d 974] as follows: “ ‘[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.’ (Connally v. General Const. Co., 269 U.S. 385, 391 [46 S.Ct. 126, 70 L.Ed. 322]; Lanzetta v. New Jersey, 306 U.S. 451, 453 [59 S.Ct. 618, 83 L.Ed. 888]; In re Peppers, 189 Cal. 682, 685-687 [209 P. 896].) A statute must be definite enough to provide a standard of conduct for those whose activities are proscribed as well as a standard for the ascertainment of guilt by the courts called upon to apply it. (Winters v. New York, 333 U.S. 507, 515-516 [68 S.Ct. 665, 92 L.Ed. 840]; In re Peppers, supra, 189 Cal. at 685-687; People v. Building Maintenance etc. Assn., 41 Cal.2d 719, 725 [264 P.2d 31]; People v. Saad, 105 Cal.App.2d Supp. 851, 854 [234 P.2d 785].) A statute will be upheld if its terms may be made reasonably certain by reference to the common law (see Connally v. General Const. Co., supra, 269 U.S. at 391; Lorenson v. Superior Court, 35 Cal.2d 49, 60 [216 P.2d 859]) or to its legislative history or purpose. (See Connally v. General Const. Co., supra, 269 U.S. at 391-392; People v. King, 115 Cal.App.2d Supp. 875, 878 [252 P.2d 78].) A statute will likewise be upheld, despite the fact that the acts it prohibits are defined in vague terms, if it requires an adequately defined specific intent. (See People v. Building Maintenance etc. Assn., supra, 41 Cal.2d at 724 and cases cited.) A court, however, may not create a standard (Lanzetta v. New Jersey, supra, 306 U.S. 451; Connally v. General Const. Co., supra, 269 U.S. 385), and a specific intent defined in the same vague terms as those defining the prohibited acts does not make a statute acceptably definite.”
And, more specifically pointed to the problem under discussion, is this language in United States v. Cardiff (1952) 344 U.S. 174, 176 [97 L.Ed. 200, 202, 73 S.Ct. 189] where the Supreme Court said “The vice of vagueness in criminal statutes is the treachery they conceal either in determining what persons are included or what acts are prohibited.” (Italics supplied.)
The People’s argument, to which we have alluded, points up the problem with respect to section 819. It would not seem unreasonable that a landlord be held responsible, at the time a tenant takes over property under a lease, for seeing that the toilet facilities are in good repair and free from dirt, filth and corrosion. Yet we do not know, with respect to the present charge, whether it relates to conditions existing at the start of a lease term or not. While it is also not unreasonable that a landlord be *Supp. 47 held similarly responsible for such maintenance and cleanliness later on during a lease term, it is equally likely that the tenant may have assumed these responsibilities. (See and compare with each other Civ. Code, §§ 1941, 1941.1, subds. (b) and (c), and 1942.1.) California statutes recognize that landlord and tenant may agree with each other on these matters. Thus the pertinent responsibility may be on one or the other. It would be most unreasonable to charge a landlord with the failure to maintain a toilet fixture in good order when the tenant has undertaken in writing, as he may under section 1942.1 of the Civil Code to maintain it, or when the tenant has the legal obligation to repair it when his own conduct has caused it to become inoperable. (See Civ. Code, § 1929.)
We hold that section 819 of the Public Health Code of the County of Los Angeles, as adopted by Ordinance No. 127507 of the City of Los Angeles is too vague to be enforced against appellant Wheeler, since it cannot be ascertained who is liable under the section.
II
Each appellant was convicted (Wheeler as to the Firmament property and Tufts as to 6901 Peach Avenue) of violating section 628 of the public health code. That section states: “No person shall occupy, maintain, or cause or permit another person to occupy or maintain any building, lot, premise, vehicle, or any other place, in such condition of construction or maintenance as will permit the breeding or harborage therein or thereon of rodents, fleas, bedbugs, cockroaches, lice, mosquitoes, or any other vermin. No person may permit an accumulation of any material that may serve as a rodent harborage unless such material be elevated not less than eighteen (18) inches above the ground or floor with a clear intervening space thereunder. Whenever the Health Officer finds any building, lot, premise, vehicle, or other place to be infested with vermin or rodents, or to be in such an insanitary condition as to require fumigation or renovation, the Health Officer may notify the owner, his agent, the tenant, or possessor thereof in writing specifying the manner in which the provisions hereof are being violated and indicating the specific measures that shall be taken by the recipient of such notice to abate said conditions.”
We reject the various challenges made to these convictions, as follows:
First, each appellant argues that “harborage” is too vague a word to establish criminal liability. We think it is a common enough English language phrase, especially when read in context, not to be misleading.
*Supp. 48 Second, Wheeler says the section is overbroad because all premises “will permit the breeding or harborage therein of rodents.” A fair reading of the ordinance shows that it relates to the prevention of conditions conducive to the presence of rodents. That is a valid statutory objective, aimed at protecting public health.
Third, Tufts asserts that the section is vague, in that it has no guidelines for determining when there is a likelihood of rodent infesta-. tion. Fairly read, the balance of the section allows a health officer to notify a violator of the condition, and to indicate the measures required to correct it. As noted above, a health inspector testified that this was done in the instant case, but that no steps were taken to remedy the condition. Reading the section to support its constitutionality, as we must if possible, we believe that it meets the test of sufficient explicitness set forth in Smith v. Peterson (1955) 131 Cal.App.2d 241, 245-246 [280 P.2d 522, 49 A.L.R.2d 1194]. There the court said; “It is well settled that a criminal statute which is so indefinite, vague and uncertain that the definition of the crime or standard of conduct cannot be ascertained therefrom, is unconstitutional and void. However, there is a uniformity of opinion among the authorities that a statute will not be held void for uncertainty if any reasonable and practical construction can be given to its language.”
“Nor does the fact that its meaning is difficult to ascertain or, susceptible of different interpretations render the statute void. All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity.
“Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears. Doubts as to its construction will not justify us in disregarding it.
“In determining whether a penal statute is sufficiently explicit to inform those who are subject to it what is required of them the courts must endeavor, if possible, to view the statute from the standpoint of the reasonable man who might be subject to its terms. It is not required that a statute, to be valid, have that degree of exactness which inheres in a mathematical theorem. It is not necessary that a statute furnish detailed plans and specifications of the acts or conduct prohibited. The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and *Supp. 49 understanding. (Lockheed Aircraft Corp. v. Superior Court, 28 Cal.2d 481 [171 P.2d 21, 166 A.L.R. 701]; Collins v. Riley, 24 Cal.2d 912 [152 P.2d 169]; Pacific Coast Dairy v. Police Court, 214 Cal. 668 [8 P.2d 140, 80 A.L.R. 1217]; People v. Ring, 26 Cal.App.2d Supp. 768 [70 P.2d 281]; Smulson v. Board of Dental Examiners, 47 Cal.App.2d 584 [118 P.2d 483]; Lorenson v. Superior Court, 35 Cal.2d 49 [216 P.2d 859]; Sproles v. Binford, 286 U.S. 374 [52 S.Ct. 581, 76 L.Ed. 1167].)”
Fourth, Tufts points to sections 1800 through 1813 of the Health and Safety Code, and claims that they preempt local regulation of rodent control. They do not. The sections establish an obligation on persons possessing places infested with rodents to try to exterminate them (§ 1803) and make a violation of this requirement a misdemeanor (§ 1813). Others of the sections provide for health officers to inspect infested places and to do the exterminating at public expense, charging the property owner therefor, if necessary. The thrust of the local regulations is in the field of prevention of infestation while that of the state provisions is extermination. State law preempts local law in one of three situations (which are elaborated, for example, in Yuen v. Municipal Court (1975) 52 Cal.App.3d 351, 354 [125 Cal.Rptr. 87], cited to us by the People). Without prolonging this opinion, it is manifest that the local health code involved here in no way has been preempted—none of the three tests is met; The state law does not fully and completely cover the field; clearly there is no paramount state concern against local action aimed at preventing rodents from breeding; and clearly the local ordinance has no adverse effect on transient citizens.
Fifth, Wheeler objects to People’s instruction No. 2 because the complaint pleaded a violation of section 628 in the conjunctive (referring to maintaining a condition “as did permit the breeding and harborage” of rodents—our italics), while the instruction was in the disjunctive, (referring to maintaining a condition “as will permit the breeding or harborage” of rodents—again, our italics). Appellant’s argument is that this difference is a material variance, leading to a conviction of an uncharged offense. Appellant is wrong. “. . . When a statute . . . lists several acts in the disjunctive, any one of which constitutes an offense, the complaint, in alleging more than one of such acts, should do so in the conjunctive to avoid uncertainty . . . Merely because the complaint is phrased in the conjunctive, however, does not prevent a trier of fact from convicting a defendant if the evidence proves only one of the alleged acts . . . .” (In re Bushman (1970) 1 Cal.3d 767, 775 [83 Cal.Rptr. 375, 463 P.2d 727].)
*Supp. 50 Sixth, Tufts points to the difference between the charging language “did permit the breeding and harborage” and the language of section 628 which states “will permit.” She elevates this difference to a denial of due process, asserting that she could have produced a different defense if the complaint had read differently. The evidence showed no actuaf presence of rodents on the premises, there being only a showing that at one time rodent droppings had been found. Thus appellant says she did not receive notice of the charge. Appellant focuses on the wrong language. The offense is the maintaining of a condition conducive to breeding and harborage of rodents. The actual presence of rats, of course, would rather conclusively establish the existence of the condition. But their absence does not negate the fact that the condition permits—in other words makes possible—the breeding and harborage of rodents. In. effect, the use of the word “did,” instead of the word “will,” at most amounted to charging a greater offense than the lesser one which was proved. There was a clear reference to section 628 in the complaint. No error resulted.
III
Appellant Tufts argues that there was not enough evidence presented to show that she occupied or maintained or caused or permitted another person to occupy or maintain the Peach Avenue premises. Given the testimony of MacCauley that he rented a room there from Tufts, on behalf of Wheeler, and that he gave the rent checks, payable to Wheeler, to Tufts, similar testimony from witness Gladden and the existence of a quitclaim deed to Tufts as well as her name on the tax roll as being the owner of the property, the contention is frivolous.
IV
The third count of which Wheeler stands convicted relates to public health code section 605. The section requires an owner, agent or manager of premises to maintain them in a clean, sanitary condition, free from accumulations of garbage, rubbish refuse and other wastes at all times, except as provided by the provisions of the ordinance or other law. The argument that the term “agent” and the term “accumulations” are vague is not worth discussing. The contention that overbreadth exists because every time one leaves garbage cans out he accumulates garbage, rubbish and refuse is without merit. The argument ignores the facts that this is not what Wheeler was charged with doing, and it overlooks the fact that other provisions of the ordinance allow—indeed require—the keeping of *Supp. 51 garbage in receptacles (§ 601) and the depositing and keeping of rubbish in adequate containers for up to 15 days (§ 603).
V
As to all of the counts involving her, Wheeler says the evidence was not sufficient. We need not recite it. We note only that health inspectors testified, as experts, to the existence of conditions which in their opinion violated the sections involved. As to her ownership of the property, she alleged under oath in an unlawful detainer action that she was the owner, later retreating to the position of a lessee with an option to purchase. In either event her control of the Firmament premises was adequately established, so as to subject her to liability.
VI
The next contention relates to Wheeler’s competency to stand trial. The record shows that at arraignment in June 1977 trial counsel “raised the issue of in competency” but the court took no steps. In July 1977 “defense counsel again raised the issue of in competency which was rejected by the Court.” The trial was not until January 1978. No question of competency was then presented. We could dispose of the argument that under Penal Code section 1368, subdivision (b) the court should have ordered a hearing held on the issue with the simple observation that appellant has not presented us with a record sufficient to show that the court did not meet its obligations. We need not do so, however. Meeting the issue head on it is enough to observe that People v. Hays (1976) 54 Cal.App.3d 755, 759 [126 Cal.Rptr. 770], binds us. Penal Code section 1368, subdivision (b), states that if counsel informs the court he believes that the defendant is or may be incompetent, the court shall order that the question is to be determined in a hearing held pursuant to Penal Code sections 1368.1 and 1369. In Hays, the court interpreted this provision to mean that a defendant is entitled to a hearing if the trial judge has a doubt as to the defendant’s competence and that defendant is not entitled to such a hearing merely upon the statement of defense counsel. The court held that there still must be substantial evidence of doubt as to competence before a defendant is entitled to a hearing.
We recognize that Wheeler argues that this case should not be followed. We are obliged to follow it. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].) Accordingly, appellant Wheeler’s additional argument that she was denied the right to *Supp. 52 appear in person at the trial because she was incompetent and her waiver of appearance on the opening day accordingly was meaningless, is based on an assumption not supported by the record.
VII
The last contention on appeal is Wheeler’s argument that she was denied a fair trial because her trial counsel was not allowed to tell the jurors that he was an appointed counsel. The statement on appeal has the hearsay statement in it that trial counsel has informed appellate counsel that “the jurors allegedly told trial counsel” that they convicted Wheeler because if she could afford private counsel she could afford to clean up her property.
The argument asks us to reverse a conviction because of what jurors allegedly told trial counsel; the settled statement shows that this matter was never brought to the trial court’s attention and that it has no knowledge of the subject. Thus, not only is this an impermissible attempt to impeach a verdict (Evid. Code, § 1150, subd. (a)), the record is inadequate in any event.
The late filed motion to add a declaration of Clarence MacCauley to the record on appeal is denied.
The judgment of conviction of appellant Wheeler as to count 1 is reversed. The judgments are otherwise affirmed.
Dowds, J., and Saeta, J., concurred.
A petition for a rehearing was denied August 31, 1979.