Opinion
DOWDS, J.
Appellant appeals his conviction of two counts of violating sections of the Business and Professions Code,[1] which are hereinafter discussed in more detail, viz. count I, section 2142, and count II, section 2142.10. Following his conviction, sentence was suspended and appellant was placed on summary probation for two years upon condition that on each count he pay a fine of $250 plus penalty assessments and obey all laws and avoid similar violations.
On appeal from a judgment of conviction, we view the evidence, as we must, in the light most favorable to the prosecution. The People’s sole witness was an undercover investigator who testified that he called at appellant’s office pursuant to a conversation that he had previously had with the receptionist, waited in a reception room, and that appellant entered the room and said “Hello. I’m Dr. Sapse.” The investigator identified himself under an alias and told appellant that his aunt had *Supp. 6 seen one of appellant’s advertisements respecting treatment by a drug by the name of Gerovital H-3 and indicating that there was some sort of tour and medical treatments involving this drug. The investigator said that, since he was financial advisor to his aunt, he wanted more information about appellant and his organization before approving his aunt’s spending any money. Appellant and the investigator then proceeded to a private office where a one-half hour discussion was held. During the conversation appellant said he was an “M.D.,” he was a physician, he was an ophthalmologist, he was a medical doctor, he had taught medicine at UCLA, at one time he was on the staff of Cedars Hospital, and he had since given up this practice to devote full time to the investigation of a drug called “Gerovital H-3.” The treatment he was advertising, he said, consisted of a person going to Baja, Mexico, some six miles into Mexican territory, since the drug was not legal for use in the State of California, and individuals would have to go to Mexico to receive the treatment. Appellant further stated, according to the investigator’s testimony, that at that time and place they would be given the drug Gerovital H-3, which he alleged had an effect on the process of aging, that people who undergo this treatment come away with a feeling of being refreshed, they no longer have pain from arthritis, and they suffer less tension and less stress, and that this treatment was administered by Mexican doctors. The investigator asked if such doctors were licensed in the state and was told that they were all American doctors, licensed, but the investigator added, throughout the conversation appellant kept referring to Mexican doctors. According to the investigator’s testimony, there was a one-week treatment and upon leaving the facility and coming back into California the patients were given a supply of Gerovital H-3 to take back across the border. “We.. . discussed that since Gerovital H-3 was not legal in the State of California he was using a drug that was similar to it and was seeking to establish a medical clinic in Fallbrook, California where people would undergo basically the same treatment, but that they couldn’t use Gerovital, which he really wanted, but this other drug was almost as effective.” Appellant referred to the fact that numerous articles had been printed about him and showed the investigator numerous articles which purportedly documented his expertise and experience in the field. Appellant handed the investigator a business card, which was admitted into evidence, headed International Health Resorts, Inc., listing offices in Las Vegas and Beverly Hills and bearing the name and designation “Alfred T. Sapse, M.D., President.” An advertisement purportedly by “GeroTours” from the October 30, 1977, edition of the Los Angeles Times, identifying Alfred T. Sapse, M.D. as president of GeroTours, *Supp. 7 and stating that GeroTours makes available to Americans Gerovital H-3 treatments in Baja California, Mexico, was admitted into evidence, as was a brochure respecting Gerovital H-3 and the tours for treatment in Mexico, prominently displaying the name of Alfred T. Sapse, M.D., stating that he received his M.D. degree in Romania and setting forth his past work with Gerovital H-3 and his asserted past experience in ophthalmology in Switzerland and in research in the United States. On cross-examination the investigator acknowledged that appellant did not say that he was available to treat the “aunt” for any physical ailment she might have or that he personally would be administering any drugs to her. Cross-examination and redirect examination explored in detail the question of whether appellant had said “I was” or “I am” in referring to his medical qualifications and the investigator stated that appellant said “I’m an ophthalmologist” and “I am a physician.”
Appellant testified without contradiction that he obtained an M.D. degree from the University of Bucharest, Romania, that he practiced in the field of geriatrics for about 10 years, that he then trained in opthalmology in Romania, Israel and Switzerland and practiced in that field in Israel and Switzerland. He further testified that he had engaged in research at various institutions in the United States, had received diplomas and certificates made out to “Alfred Sapse, M.D.” and had published articles in medical and scientific journals. He stated that he had rendered no services as a private physician since 1976, that he formed GeroTours as a company to help people who needed Gerovital H-3 to take it in Mexico, and that he is president of International Health Resorts, a publicly held company which is the successor of GeroTours. Appellant and other witnesses testified as to other persons with medical training who use the designation “M.D.” and are described by themselves and others as physicians, although they are not licensed to practice medicine in California. Appellant also testified that he did not use the word “physician” in referring to himself in his conversation with the investigator and that he had not used the present tense in describing himself as an ophthalmologist, but, as indicated above, on appeal we are bound by the conflicting testimony of the investigator. Appellant acknowledges that he is not licensed to practice medicine in California.
Appellant assigns numerous grounds upon which he contends his conviction should be reversed: he (1) attacks the constitutionality of the statutes he is accused of violating and challenges the sufficiency of the *Supp. 8 evidence, (2) contends that acts of prosecutorial misconduct during closing argument prejudiced his case, (3) asserts that defense counsel’s failure to object during closing argument deprived him of effective counsel, (4) claims the trial court erroneously excluded evidence of estoppel, and (5) contends that the trial court erroneously instructed the jury that the offenses charged were general intent crimes.
I.
Challenge to the Constitutionality of the Statutes and Sufficiency of Evidence
A. Section 2142 (count I).
Section 2142 provides in pertinent part: “Any person who uses in any sign, business card, letterhead or in an advertisement the word ‘doctor,’ the letters or prefix ‘Dr.’, the letters ‘M.D.’, or any other term or letters indicating or implying that he is a physician and surgeon, physician, surgeon, or practitioner under the terms of this or any other law, or that he is entitled to practice hereunder, or under any other law, without having at the time of so doing a valid, unrevoked certificate... is guilty of a misdemeanor.”
Appellant challenges the constitutionality of the statute on grounds it is vague and overbroad. In Lawton v. Board of Medical Examiners (1956) 143 Cal.App.2d 256 [299 P.2d 362] appellant, a graduate of an Ohio medical school formed a training school for medical assistants in California. Charged with violating this section by using the letters “M.D.” in the school’s advertising matter, the court upheld the statute against an identical constitutional attack, reasoning as follows: “Contending that because he was not engaged in the practice of medicine section 2142 could not in reason apply to him, he argues that it is unconstitutional as to him inasmuch as it deprives him of a valuable property right, to wit, the right to the use of the letters ‘M.D.’ to indicate the area of his professional training. Conceding, arguendo, that appellant has a property right in the significant letters, yet it must be acknowledged that such right does not take precedence over the public welfare which the section seeks to conserve. It is plainly apparent that the Legislature may well have deemed it wise that those who instruct in the science of medicine should be forced to disclose their educational backgrounds and that they should not be allowed to mislead students *Supp. 9 into thinking their instructors are licensed to practice medicine in California. If in fact the teachers have had excellent medical training, there is nothing in the law that prevents them from indicating such fact. Medical schools do not uphold , equally the same high standards, nor does California maintain reciprocity in the medical field with all other states. The student and the public are entitled to know the qualifications of those who indirectly or directly affect the public welfare as does the medical profession. Neither graduation from a reputable institution nor otherwise sufficient education will excuse the necessity of being certified before a person may advertise his right to adorn his name with Dr. or M.D. Such letters are false insignia when a physician attempts to tell the world he is licensed when in fact he is not.
“Whether or not they actually practice here is immaterial. The intent of the Legislature was to shield the public against those who for any reason have not been duly licensed. A similar situation was involved in Garfield v. Board of Medical Examiners, 99 Cal.App.2d 219, 223 [221 P.2d 705]. There the doctors in question had each been licensed to practice medicine in another state. Question arose as to whether they were mere interns or residents, but the court ruled their exact status was immaterial. So long as they did not possess current, valid licenses, they were not entitled to use the letters ‘M.D.’ Appellant herein attempts to distinguish this case by contending that those convicted in the Garfield case were ‘practicing’ medicine whereas he, appellant, had made no attempt to do so. The purpose of section 2142, supra, is to protect the public; it is not primarily concerned with what the doctor does with his time. There is no contention on the part of the state that Law-ton was practicing medicine. His offense lay in holding himself out as a physician in this state although he does not possess a valid license to do so. The enactment of measures for the protection of society is the exclusive prerogative of the Legislature. Courts are not to be concerned with such statutes unless it is made to appear that the litigant’s constitutional right is clearly violated. If it does not so appear, the statute will be regarded as one intended by the lawmakers to promote the general good. It is beyond the scope of appellate review to penetrate the findings of the Legislature to determine that there did not exist such conditions as would justify the enactment. (People v. George, 42 Cal.App.2d 568, 573 [109 P.2d 404].)” (Id. at pp. 259-260.)
The court went on to defeat a challenge to the statute on the grounds of vagueness, determining that the language was sufficiently certain. *Supp. 10 (Id. at p. 262.) Appellant contends that the holding of Lawton v. Board of Medical Examiners, supra, 143 Cal.App.2d 256, should be reexamined in the light of Va. Pharmacy Bd. v. Va. Consumer Council (1976) 425 U.S. 748 [48 L.Ed.2d 346, 96 S.Ct. 1817] and Board of Medical Examiners v. Terminal-Hudson Electronics, Inc. (1977) 73 Cal.App.3d 376 [140 Cal.Rptr. 757] since these and other cases indicate that commercial speech may, at least under some circumstances, be entitled to the protection of the First Amendment. Even if so-called commercial speech is constitutionally protected, a statute which restricts it may still be valid if it is narrowly drawn and vindicates an important state interest. (See Bowland v. Municipal Court (1976) 18 Cal.3d 479, 493-494 [134 Cal.Rptr. 630, 556 P.2d 1081].) Moreover, the United States Supreme Court pointed out in Ohralik v. Ohio State Bar Association (1978) 436 U.S. 447, 456 [56 L.Ed.2d 444, 453, 98 S.Ct. 1912] that commercial speech has been afforded a “limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, while allowing modes of regulation that might be impermissible in the realm of noncommercial expression.” The proposition that section 2142, which imposes restrictions upon persons who wish to imply in California that they are medical practitioners, relates to an important state interest hardly admits of argument. The health and perhaps the lives of California citizens may be at stake. The restriction is a relatively narrow one. As indicated in Lawton, supra, 143 Cal.App.2d 256, other jurisdictions may have different standards which one must meet before using the letters “M.D.” or other terms indicating he is a medical practitioner. Such a person may use these terms elsewhere without interference by the State of California, but he cannot use such terms in California in a sign, business card, letterhead or advertisement unless he has proved he meets California standards by being licensed under California laws. One can think of instances where the private delivery of a professional card bearing the designation “M.D.” in California would in all probability cause no real harm, but such distinctions are for the Legislature to make. In fact it has provided that the prohibitions of section 2142, among those of other statutes, shall not apply to medical officers in the armed services or the public health service, to out-of-state doctors consulting with local doctors or such practitioners who are in California to promote professional education through certain lectures, clinics or demonstrations. (§§ 2144 and 2145.) If we were drafting the statutes, we might think certain other exemptions appropriate, but making such classifications is the business of legislators, not of judges. Section 2142 is drawn with sufficient clarity and narrowness, and it relates to a sufficiently important state *Supp. 11 interest to pass constitutional muster and the evidence is clearly sufficient to show its violation.
B. Section 2142.10 (count II).
Section 2142.10 provides that, “Any person who represents or holds himself out as a ‘physician’... without, at the time of so doing, having a valid, unrevoked and unsuspended certificate as a physician and surgeon. . .is guilty of a misdemeanor.”
As far as we have been able to determine, this section has not been substantively addressed under California law. We begin our analysis with the general principle that a penal statute is presumptively valid (People v. Battin (1978) 77 Cal.App.3d 635, 653 [143 Cal.Rptr. 731, 95 A.L.R.3d 248]) and will not be deemed void for vagueness if any reasonable and practical construction can be given to its language. (Lawton v. Board of Medical Examiners, supra, 143 Cal.App.2d at p. 261.)
Webster’s Third New International Dictionary defines “representing” or “holding oneself out” as “to make out to be, to bring clearly before the mind, to cause to be known, felt or apprehended.” A physician has been defined under California law to be one who “prescribe[s] for and treat[s] the sick and afflicted....” (Millsap v. Alderson (1923) 63 Cal.App. 518, 525 [219 P. 469].) We believe the language of the statute is thus sufficiently clear and certain, conviction requiring proof that appellant made himself out to be one who treats the sick and afflicted. We further deem the statute, reasonably read, to mean that, to fall within its prohibitions, one must hold oneself out as being one who treats the sick and afflicted at the time and place of the representation, i.e., contemporaneously in California. This statute omits the language found in section 2142 that the representation prohibited may be either that he is a physician under the laws of this state “or any other law.” We believe that if the Legislature had intended section 2142.10 to prohibit a statement that one is a physician in another place it would clearly have said so, as it did in section 2142. Construing section 2142.10 in this manner, it is apparent that there is insufficient evidence to support the conviction of count II. The evidence is uncontradicted that appellant stated that he had given up the practice of medicine and that the treatments in connection with the tours he was promoting would be given by others in Mexico. If in so doing he violated any law, it was not section 2142.10.
*Supp. 12 II
Prosecutorial Misconduct in Closing Argument
Appellant claims prejudicial error in statements made by the prosecution during closing argument, specifically that appellant had committed criminal acts, was a “flim-flam” man, and that unfair contrasts were drawn between appellant’s advanced education and wealth and the more limited achievements of the jurors. Defense counsel failed to object to these statements at trial and is thus foreclosed from raising the issue on appeal. (People v. Beivelman (1968) 70 Cal.2d 60, 75 [73 Cal.Rptr. 251, 447 P.2d 913].)
Ill
Denial of Effective Counsel
Appellant next contends that counsel’s failure to object to the prosecutor’s statements during closing argument deprived him of effective counsel. The record shows that defense counsel was cognizant of the emphasis of the prosecutor’s argument, as defense counsel expressly responded to each of the claimed offensive statements in his own closing argument. However, the record does not indicate why defense counsel chose to respond to the prosecutor’s statements rather than to object to them.
People v. Pope (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859] states that the burden of proving a claim of inadequate trial assistance is on the appellant, who must show counsel acted or failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates. Where, as here, the record fails to shed light on why counsel acted or failed to act, we are bound under Pope, supra, at page 426, to affirm the matter on appeal. Moreover, we note that in applying the Pope standard to privately retained counsel in People v. Frierson (1979) 25 Cal.3d 142, the Supreme Court commented that counsel’s “. . . failure to. .. object... [is a matter] which usually involve^] tactical decisions on counsel’s part and seldom establishes] a counsel’s incompetence.”
*Supp. 13 IV
Estoppel
Edward L. English testified in a hearing outside the presence of the jury that in 1972, while employed as an investigator with the Board of Medical Examiners of the State of California he investigated appellant’s professional activities. English’s duties were limited to investigation of complaints made to the board and submission of a written report to the board which included a written recommendation. In the course of this investigation he informed appellant that it was unlawful to use the terms “Dr.” or “M.D.” if representing oneself as available for the practice of medicine. However, as appellant was not then engaged in the treatment of human beings, saw no patients, prescribed no drugs, and was involved solely in the operation of a pharmaceutical company, English recommended that no punitive action be taken by the board. He also advised appellant that he could use the prefix “Dr.” informally among friends and family, but not when advising or consulting with other individuals.
The trial court ruled the evidence was not admissible at trial because Mr. English had no authority to render binding decisions at the time of the investigation, and because appellant’s activities were sufficiently distinguishable in 1978 to vitiate any claim of estoppel arising from the advisement in 1972.
Mistaken reliance upon government officials can be a defense to be considered by the trier of fact. (People v. Norton (1978) 80 Cal.App.3d Supp. 14 [146 Cal.Rptr. 343]; People v. Ferguson (1933) 134 Cal.App. 41, 51-53 [24 P.2d 965].) Equitable estoppel is also available against the government in rare instances; however, the existence of estoppel is a question of fact for the trial judge, whose determination on the factual question is conclusive on appeal. (Pettitt v. City of Fresno (1973) 34 Cal.App.3d 813, 818 [110 Cal.Rptr. 262].) In any event, we agree that the circumstances in 1972 were sufficiently distinguishable from those at the time of the English advisement to justify the judge’s ruling.
*Supp. 14 V.
Whether the Offenses Charged Were Specific or General Intent Crimes
Appellant contends the trial court should have instructed the jury that sections 2142 and 2142.10 are specific intent crimes. The language of the statutes does not support this contention. Where, as here, the. definition of a crime consists only of the description of a particular act without express reference to intent to do a further act or achieve a future consequence, we need ask only whether the appellant intended to do the act which the law declares a crime. (People v. Daniels (1975) 14 Cal.3d 857, 860 [122 Cal.Rptr. 872, 537 P.2d 1232].) Accordingly, sections 2142 and 2142.10 are general intent crimes and the jury was correctly instructed on the law respecting general criminal intent. We think, however, that on any retrial of count II the jury might well be given more enlightenment as to the proper construction of section 2142.10 in conformity with the views expressed above.
VI.
Disposition
The judgment of conviction on count I, violation of section 2142, is affirmed. The judgment of conviction of count II, violation of section 2142.10, is reversed.
Ibáñez, J., concurred.

Section references in this opinion are to sections of the Business and Professions Code.