138 Cal.App.3d 774 (1982)
188 Cal. Rptr. 295
THE PEOPLE, Plaintiff and Respondent,
v.
JOHN GONDA et al., Defendants and Appellants.
Docket No. 19102.
Court of Appeals of California, First District, Division One.
December 30, 1982.
*776 COUNSEL
David B. Birenbaum and Birenbaum, Luscutoff & Lendormy for Defendants and Appellants.
George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Donna Petre, Deputy Attorneys General, for Plaintiff and Respondent.
*777 OPINION
RACANELLI, P.J.
Gerald R. Sullivan and John Gonda were charged with nine counts of violating section 31110 of the Corporations Code (unlawful offering and selling of franchise without prior registration), nine counts of violating section 31201 of the same code (selling franchise by means of untrue statements) and nine counts of grand theft in violation of Penal Code section 487.
After a jury trial, appellants were convicted on all but counts 24 (Corp. Code, § 31201) and 26 (Pen. Code, § 487). The court granted a motion as to each appellant dismissing counts 9 (Corp. Code, § 31110), 16 (Corp. Code, § 31201), and 23 (Pen. Code, § 487) notwithstanding the jury's verdicts. The present appeal is therefore taken from judgments entered on guilty verdicts on the remaining 22 counts.
A brief recital of the factual background underlying the convictions indicates that appellants, who had had wide experience in the consulting field, met and decided in the mid-1970's to merge their respective businesses as the Logan Company (hereinafter Logan), a management consulting business with emphasis on small and medium-size firms. Advertisements were placed in the Wall Street Journal and other newspapers inviting inquiry by two classes of prospective personnel: salesmen, who were to be trained to develop new clients, and consultants, who, after being trained, were to furnish consulting services to such new clients.
There can be little doubt that from the inception of the venture appellants consciously exaggerated the financial stability, expertise and prospects of the new firm.
Their business proposal was essentially as follows: a format for a "registered management consultant" contract was devised, under the terms of which each prospective management consultant would pay $3,750 for the "privilege" of joining Logan as an independent contractor. The consultant would receive in exchange the right to service what was represented to be an extensive number of existing clients who desired Logan's management consulting service. The record discloses a variety of misrepresentations to seven prospective "franchisees"; while it is unnecessary to detail the substance of such misrepresentations, it may be useful to summarize them as follows:
All of the prospective "franchisees" were informed of Logan's "extensive" clientele and "bright" prospects, and of "excellent" earning potential and "valuable" training opportunities.
*778 After paying all or part of the $3,750 "fee," some applicants received fairly extensive training and were actually assigned to and worked for Logan's few clients, and obtained some remuneration. In no case, however, could it reasonably be said that the "franchisee" received anything approaching what he had been led to believe by Gonda's and Sullivan's blandishments.
After a number of complaints to the district attorney from irate Logan franchisees, an investigation was commenced, charges were filed, and the guilty verdicts outlined above were returned.
On appeal, Gonda and Sullivan raise a number of specific arguments, though some rather obliquely. For the reasons which follow, we conclude that the convictions for grand theft must be reversed, but the remaining convictions must be affirmed.

I
Appellants were convicted of both grand theft by false pretenses (Pen. Code, § 487) and unlawful sale of franchises by means of untrue statements (Corp. Code, § 31201). (1a) Yet, it is well settled that double conviction is not permitted where one offense is necessarily included in the other. (People v. Greer (1947) 30 Cal.2d 589, 597-598 [184 P.2d 512]; People v. Ratcliffe (1981) 124 Cal. App.3d 808, 820 [177 Cal. Rptr. 627]; People v. Johnson (1978) 81 Cal. App.3d 380, 387 [146 Cal. Rptr. 476]; People v. Pater (1968) 267 Cal. App.2d 921, 924 [73 Cal. Rptr. 823].) In the present case, the seven counts of violation of section 31201 are based upon the same acts as the seven counts of grand theft by false pretenses. Appellants necessarily committed the offense of selling franchises by misrepresentations each time they committed grand theft by false pretenses upon the sale of the very same franchises. (People v. Pater, supra, 267 Cal. App.2d 921, 926 [joyriding and grand theft  auto].)
The remedy where a defendant has been erroneously convicted of both the greater and the lesser crime is reversal of the offense carrying the less serious punishment. (See People v. Wilson (1975) 50 Cal. App.3d 811, 815 [123 Cal. Rptr. 663]; People v. Pater, supra, 267 Cal. App.2d 921, 926.) Accordingly, the convictions for grand theft must be set aside.[1]

II
With respect to the convictions for violating the franchise laws, we affirm. We discuss the requisite mental state required in relation to the charged offenses.
*779 The Franchise Investment Law is designed to protect prospective franchisees by requiring the franchisor to register his franchise offering and to provide full and accurate information. (Corp. Code, § 31000 et seq.) Corporations Code section 31110 makes it unlawful to sell a franchise unless the offer has been registered. Section 31201 in turn makes it unlawful to use untrue statements in the offer or sale of a franchise. Any person who "wilfully violates any provision" of the franchise law is subject to criminal prosecution and imprisonment upon conviction. (Corp. Code, § 31410, italics added.)
The word "wilfully" when used in the penal statutes means "simply a purpose or willingness to commit the act or to make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage." (Pen. Code, § 7.) (2a) Thus, the courts have consistently held that even where the statute requires a "wilful" violation, public welfare offenses in general are punishable without proof of criminal intent. (People v. O'Brien (1892) 96 Cal. 171, 175-179 [31 P. 45] [wilful alteration of public record]; People v. Park (1978) 87 Cal. App.3d 550, 562 [151 Cal. Rptr. 146] [wilful violation of corporate securities law]; People v. Clem (1974) 39 Cal. App.3d 539 [114 Cal. Rptr. 359] [same]; cf. People v. Thygesen (1979) 93 Cal. App.3d 895, 904-905 [156 Cal. Rptr. 212] [violation of subdivided lands act]; People v. Byers (1979) 90 Cal. App.3d 140 [153 Cal. Rptr. 249] [same]; People v. McCalla (1923) 63 Cal. App. 783, 793-794 [220 P. 436] app. dism., 267 U.S. 585 [69 L.Ed. 799, 45 S.Ct. 461], disapproved on other grounds in People v. Elliot (1960) 54 Cal.2d 498, 503 [6 Cal. Rptr. 753, 354 P.2d 225] ["knowing" violation of corporate securities law]; see generally 1 Witkin, Cal. Crimes, §§ 57, 62, pp. 62, 66-67.)
Because no criminal intent was required for the franchise law violations, we reject appellants' claim of error in the giving of CALJIC instruction No. 4.36 that "it is no defense that [the defendant] did not know that his act was unlawful or that he believed it to be lawful."[2] In any case, knowledge of the fact of nonregistration is not the equivalent of knowledge of unlawful conduct. (People v. McCalla, supra, 63 Cal. App. 783, 793; but cf. People v. Calban (1976) 65 Cal. App.3d 578, 585-586 [135 Cal. Rptr. 441].)
(3a) Nor do we find merit in appellants' further argument that the trial court improperly excluded evidence which would have negated any criminal intent. Appellants' offer of proof included the testimony of a business lawyer consulted by appellants who allegedly informed them that their contract was not a registrable franchise and "they therefore were not breaking any laws." *780 (4a) (See fn. 3.), (3b) Reliance on advice of counsel provides no defense to the charges here.[3] (Milner v. Fox (1980) 102 Cal. App.3d 567, 574, fn. 9 [162 Cal. Rptr. 584]; People v. Clem, supra, 39 Cal. App.3d 539; People v. Marvin (1941) 48 Cal. App.2d 180, 194-195 [119 P.2d 413]; People v. McCalla, supra, 63 Cal. App. 783, 795; see People v. Snyder (1982) 32 Cal.3d 590 [186 Cal. Rptr. 485, 652 P.2d 42] [evidence of defendant's asserted mistake of law regarding her status as convicted felon properly excluded].)
(5a) We also reject appellants' claim that the franchise laws are unconstitutionally vague. (6a) It is well settled that a criminal statute which is so indefinite, vague and uncertain that the definition of the crime or standard of conduct cannot be ascertained therefrom is unconstitutional and void. However, the fact that the statute's meaning is difficult to ascertain does not render the statute void. "`... All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden.'" (People v. Superior Court (Hartway) (1977) 19 Cal.3d 338, 345 [138 Cal. Rptr. 66, 562 P.2d 1315], quoting from Rose v. Locke (1975) 423 U.S. 48, 50 [46 L.Ed.2d 185, 188, 96 S.Ct. 243]; see generally People v. McCaughan (1957) 49 Cal.2d 409, 414 [317 P.2d 974]; People v. Heffner (1977) 70 Cal. App.3d 643, 653-655 [139 Cal. Rptr. 45].) (7a) All presumptions and intendments favor the validity of a statute, and it will be upheld unless its unconstitutionality clearly, positively and unmistakably appears. (In re Dennis M. (1969) 70 Cal.2d 444, 453 [75 Cal. Rptr. 1, 450 P.2d 296]; People v. Medina (1972) 27 Cal. App.3d 473, 479 [103 Cal. Rptr. 721]; People v. Tufts (1979) 97 Cal. App.3d Supp. 37, 48 [159 Cal. Rptr. 163].) With respect to the Corporate Securities Act, the courts have consistently rejected arguments that the act is void for vagueness. (In re Leach (1932) 215 Cal. 536, 543-546 [12 P.2d 3] app. dism., 287 U.S. 579 [77 L.Ed. 507, 53 S.Ct. 290]; People v. Taylor (1973) 30 Cal. App.3d 117, 123 [106 Cal. Rptr. 216]; Conrad v. Superior Court (1962) 209 Cal. App.2d 143, 150-151 [25 Cal. Rptr. 670]; People v. Sears (1956) 138 Cal. App.2d 773, 793 [292 P.2d 663].) (5b) We reach the same conclusion with respect to the parallel Franchise Investment Law. We think the language of the statute is sufficiently definite to provide an adequate warning as to what conduct comes within its prohibition. As to appellants' remaining arguments, we find them to be wholly without merit and to require no discussion.
*781 The convictions on counts 17, 18, 19, 20, 21, 22, 27 for grand theft are reversed. The remaining convictions appealed from are affirmed.
GRODIN, J.,[*] Concurring.
(1b), (2b), (3c), (4b), (5c), (6b), (7b) The jurisprudential questions raised by our dissenting colleague are formidable and deserving of careful consideration, but so far as this case is concerned it appears to me that the Supreme Court's recent decision in People v. Snyder (1982) 32 Cal.3d 590 [186 Cal. Rptr. 485, 652 P.2d 42] is determinative. The court in Snyder, following People v. O'Brien (1892) 96 Cal. 171, 176 [31 P. 45], held that the defendant's asserted mistake regarding her status as a convicted felon was no defense to a Penal Code section 12021 charge (possession of a concealable firearm by a convicted felon). The court in Snyder did not discuss the distinction advanced by our colleague between crimes malum prohibitum and mala in se; and, assuming for purposes of discussion that those categories are definable and import certain legal consequences in certain contexts, it would be difficult to say that the carrying of a firearm by a felon is any more unlawful "in itself" than the failure to register a franchise. I observe nothing in the dissenting opinion that would serve to distinguish Snyder.
NEWSOM, J.
I respectfully dissent.
The disagreement between the majority and myself respecting the registration offenses (Corp. Code, § 31110 et seq.) is simple. My colleagues, following what they believe to be binding precedents, hold that the defendants must be convicted if they wilfully performed the acts charged. They cite to this effect People v. O'Brien (1892) 96 Cal. 171 [31 P. 45]. In dissent, I conclude that while mere wilfulness can be sufficient in some crimes, namely, those mala in se  such as the grand theft charges against defendants here  it will not suffice for conviction where the crime is one malum prohibitum, which does not by its mere commission import the mens rea or evil design required by both statute and common law.
The issue is to my mind one of fundamental importance. It has become so clouded by conflicting appellate decisions and ambiguous dicta in certain early decisions of our Supreme Court, that I venture on the following rather lengthy comment.
As far as my research discloses, the issue was first raised in People v. Harris (1866) 29 Cal. 678, where a man accused of voting twice in an election defended himself on the ground that, when he voted for the second time, he had been too drunk to know what he was doing. Under the heading "Evil intent necessary to constitute a crime," the court explained: "It is laid down in the *782 books on the subject ... [as] a universal doctrine that to constitute what the law deems a crime there must concur both an evil act and an evil intent. Actus non fecit reum nisi mens sit rea. [Citation.] Therefore the intent with which the unlawful act was done must be proved as well as the other material facts stated in the indictment; which may be by evidence either direct or indirect tending to establish the fact, or by inference of law from other facts proved. When the act is proved to have been done by the accused, if it be an act in itself unlawful, the law in the first instance presumes it to have been intended, and the proof of justification or excuse lies on the defendant to overcome this legal and natural presumption." (29 Cal. 678, at p. 681, italics added.)
Solid agreement for this concept was expressed in a later case, People v. Burns (1888) 75 Cal. 627 [17 P. 646], which concerned an election officer charged with failing to swear a voter as required. The Supreme Court approved the giving of an instruction by the trial court that the officer, in order to be convicted, must have acted knowingly and fraudulently. Shortly thereafter, in People v. Ribolsi (1891) 89 Cal. 492 [26 P. 1082], the court, disapproving a jury instruction which placed the burden of negating criminal intent on the defendant, observed that "... when the defendant relies upon no distinct, separate, or independent fact, such as insanity, but confines his defense to the original transaction on which the charge is founded, ... the burden of proof never shifts, but remains upon the people throughout the whole case to prove the act committed a criminal one beyond a reasonable doubt. ... [¶] To declare otherwise would be to say that the mere proof of the taking away of the horse of another from a pasture without permission of the owner, a mere trespass, would throw upon a party doing that act, if charged with larceny, the burden of proving that he did not take the horse and carry it away with intent to steal, ..." (Id., at p. 500, first italics added.)
It therefore appears to have been early understood that mere wilfulness would suffice for conviction only where the crime charged embraced conduct unlawful in itself. Such, in any event, was the state of the law at the time the high court directly confronted the issue of the sufficiency of mere wilfulness, in People v. O'Brien, supra, 96 Cal. 171  a case which I think has caused confusion and mischief, being often cited today in support of so-called "strict" criminal liability.
The facts in O'Brien were that one Derevan had conveyed to Dennis O'Brien a tract of land in Modoc County. The latter erased his first name, "Dennis," from the deed and inserted in its place the name of his wife, "Mary," and caused the deed to be recorded in this form.
Later, Dennis O'Brien admitted his wrongdoing to the County Recorder, and asked that official to alter the record to show the "truth" of the underlying *783 transaction. Upon receiving the consent of both Derevan and Mary O'Brien, the recorder complied.
Dennis O'Brien was on these facts convicted of the crime of altering a public record. He appealed, urging that his intent had been the entirely innocent one of correcting the record to show the true state of affairs. The court, however, rejected this defense, pointing to Penal Code section 7,[1] thus in effect implying that the commission of the act charged, if done merely wilfully, sufficed for conviction irrespective of questions of intent.
Without questioning the correctness of the result in O'Brien  reversal on other grounds  I suggest that its rationale is mere erroneous dicta. Thus, the prohibited conduct in the case was not falsifying the record, but "altering" it. The code prohibited altering the record without the consent of the proper parties. The recorder assisted in altering the record when the proper parties, Derevan and Mary O'Brien, applied to him; the crime, however, was committed, not when the recorder altered the record, but when Dennis O'Brien himself attempted to have it altered.
If I am correct the crime was in reality one malum in se, and the opinion  obiter dictum  that merely doing it wilfully would suffice for conviction, seems unobjectionable, since it remained open to Dennis O'Brien to defend himself by showing that he had already obtained the consent of Mary and Derevan.
The only other Supreme Court authority I have found favoring the existence in California of strict criminal liability is People v. Dillon (1926) 199 Cal. 1 [248 P. 230], a case which relies almost exclusively on People v. O'Brien, supra, 96 Cal. 171, just discussed.
In Dillon, supra, a public officer was charged with malfeasance in the use of public funds. It was shown that as a county purchaser, Dillon had been able to buy certain items at discounted prices, and did so for the benefit of departmental friends. Elaborating on the theme that the crime at issue was not embezzlement, even though that word appeared in the title of the section at issue, and that Dillon was a public officer, in special circumstances, the court held that no intent to defraud need be proven  that mere wilfulness was sufficient.
Once again, however, it seems to me that besides resting on erroneous precedents, and being confined to public officials, Dillon involved fraudulent, malum in se conduct, in the nature of embezzlement.
*784 On the other hand, in the 45 years since People v. Dillon, supra, 199 Cal. 1, our Supreme Court has uniformly denied or restricted the theory that wilfulness alone is sufficient to support a criminal conviction. These decisions include In re Marley (1946) 29 Cal.2d 525, 528 [175 P.2d 832]; People v. Vogel (1956) 46 Cal.2d 798 [299 P.2d 850]; People v. Stuart (1956) 47 Cal.2d 167 [302 P.2d 5, 55 A.L.R.2d 705]; and, more recently, People v. Hernandez (1964) 61 Cal.2d 529 [39 Cal. Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092], where it was said that, "`"At common law an honest and reasonable belief in the existence of circumstances, which, if true, would make the act for which the person is indicted an innocent act, has always been held to be a good defense...."'"[2] (61 Cal.2d at p. 535.)
So far as I can determine, therefore, the holding that, in general, mere wilfulness is sufficient for conviction in California where the act is malum prohibitum does not rest upon any decisions binding on this court, whereas the contrary proposition, beginning with People v. Harris, supra, 29 Cal. 678, and continuing through People v. Hernandez, supra, 61 Cal.2d 529, is established.
Turning to the specific facts of the case at bench, it cannot reasonably be contended  and the majority do not claim  that the franchise act creates or defines crimes exclusively "wrong in themselves." Indeed, there are two sections of the act which create crimes, one proscribing "fraudulent," the other merely "prohibited" acts. The former plainly correspond to grand theft and are mala in se within traditional common law contemplation, and their commission imports the criminal intent necessary under Penal Code section 20. Proving that the accused wilfully did such acts makes a prima facie case against him, and he can hardly be heard to say that he did not understand such acts to have been criminal.
As to these acts, I agree that the convictions should be reversed, not only on the necessarily included offense theory, but also because of the trial court's erroneous statement concerning CALJIC No. 4.36  a restatement of the venerable maxim that "ignorance of the law is no excuse"  did not apply to the acts allegedly comprising grand theft.[3]
In this latter respect, given the bewildering complexity of numerous, overlapping charges, divided into different categories requiring proof of different mental states for conviction, I do not find the error correctable by later explanations. *785 I hence find it prejudicially misleading. (Cf. People v. Gonzales (1967) 66 Cal.2d 482, 493 [58 Cal. Rptr. 361, 426 P.2d 929]; People v. St. Andrew (1980) 101 Cal. App.3d 450, 465 [161 Cal. Rptr. 634].)
As to the registration violations, wilful though the omissions may have been  and I have grave doubts even as to the existence of wilfulness  I simply think the majority mistaken in holding that such omissions can be criminalized in the absence of proof  direct or circumstantial  of defendants' culpable mental state, or mens rea. (Cf. Pen. Code, §§ 20, 26, subd. Four; People v. Mayberry (1975) 15 Cal.3d 143, 154 [125 Cal. Rptr. 745, 542 P.2d 1337]; People v. Hernandez, supra, 61 Cal.2d 529; People v. Vogel, supra, 46 Cal.2d 798; People v. Harris, supra, 29 Cal. 678.)
Appellants' petition for a hearing by the Supreme Court was denied March 29, 1983. Grodin, J., did not participate therein.
NOTES
[1] The punishment for grand theft is imprisonment in the county jail for one year or state prison. (Pen. Code, § 489.) The punishment for violating the Franchise Investment Law is identical, with the additional penalty of a fine. (Corp. Code, § 31410.) This additional punishment renders the latter crime a more serious offense.
[2] Since the convictions for grand theft must be set aside on other grounds, we dismiss as moot appellants' claim that the instruction was improperly declared applicable to that specific intent crime.
[3] The statute specifically exempts from criminal liability any person who "had no knowledge of [an administrative] rule or order." It does not exempt a person who lacked knowledge of the law itself. (Corp. Code, § 31410.)

Section 31511 permits the defense of good faith reliance on any written interpretive opinion of the commissioner or the Attorney General. (See People v. Ferguson (1933) 134 Cal. App. 41, 51-53 [24 P.2d 965]; People v. Sapse (1980) 104 Cal. App.3d Supp. 1, 13 [163 Cal. Rptr. 920].) But it does not create a defense for good faith reliance on private counsel. (People v. Clem, supra, 39 Cal. App.3d 539.)
[*] Assigned by the Chairperson of the Judicial Council.
[1] Then Penal Code section 7 stated in pertinent part: ... "1. the word `willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage."
[2] (Cf. also Mueller, On Common Law Mens Rea (1958) 42 Minn.L.Rev. 1043.)
[3] Originally CALJIC No. 4.36 was said by the court to apply only to the franchise sections of the Corporations Code, without distinction between those involving fraud  where it was proper  and that not involving fraud  where, as I argue, it was not. Later, at the People's request, the jury was told that the instruction had been read "the wrong way" and the instruction was reread as being applicable to the grand theft counts but not as to the franchise counts.