**DOLLAR SYSTEMS, INC.,
Plaintiff–Counterclaim–
Defendant–Appellant,**

v.

**AVCAR LEASING SYSTEMS, INC.; William H. Schroff; William Smoot, Conrad Marshall; Ralph Apton, Defendants–Appellees,**

**Avcar Leasing Systems, Inc.,
Counterclaim–Plaintiff–Appellee,**

**Henry J. Caruso; E. Woody Francis, Counterclaim–Defendants–Appellants.**

**No. 87–6422.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 1989.

Decided Nov. 13, 1989.

---

Theodore F. Schwartz, Clayton, Mo., for plaintiff-counterclaim-defendant-appellant.

David J. Butler, Brownstein, Zeidman, and Schomer, Washington, D.C., for defendants-counterclaim-plaintiffs-appellees.

Ralph J. Apton, pro se.

Before NORRIS, NOONAN and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

## OVERVIEW

Dollar Systems, Inc. ("DSI") brought this action against Avcar Leasing Systems, Inc. ("Avcar") for breach of a franchise contract. Avcar counterclaimed for rescission and restitution under California Franchise Investment Law, Cal.Corp.Code §§ 31101, 31110, and 31119 (West Supp. 1989). Following a bench trial on the rescission counterclaim, the district court: (1) rescinded the franchise agreement; (2) awarded Avcar restitution and damages; (3) dismissed DSI's breach of contract action; and (4) awarded attorneys' fees to Avcar. *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 673 F.Supp. 1493 (C.D.Cal.1987). We affirm as to all issues except damages. We remand for further findings on the issue of damages.

## FACTS

DSI is a wholly-owned subsidiary of Dollar Rent A Car Systems, Inc. ("DRACSI"). Both corporations have their principal place of business in Los Angeles, California. The individual appellants, Henry J. Caruso and E. Woody Francis, are the principal executives of DSI and DRACSI.

Representatives of Avcar, a Virginia corporation, and DSI held their first meeting on May 14, 1984, at DSI's headquarters in Los Angeles, California to discuss a possible franchise sale. Present were Francis and Caruso, William Schroff, the President of Avcar, and Avcar shareholders Ralph Apton and Conrad Marshall. The parties discussed the purchase of a Dollar franchise and the purchase of Dollar Rent A Car–Washington, the DRACSI subsidiary that operated the Dollar franchise in the Virginia–Maryland–D.C. area. The parties also discussed leases and concession agreements for Baltimore/Washington International Airport and the airport lease and concession agreement for Dulles International Airport, as well as the construction of a service facility at Dulles.

Representatives of DSI and Avcar met again at DSI's offices in Los Angeles to execute the franchise agreement on June 15, 1984. When DSI refused to sell the Dollar–Washington subsidiary outright, the parties agreed to a sale of certain Dollar–Washington assets instead. The franchise agreement, as executed, gave Avcar the right to operate car rental businesses in Maryland, Virginia, and Washington, D.C. The parties agreed to a total purchase price of $500,000, including $290,000 for the franchise rights, $60,000 for the Dollar–Washington assets, and $150,000 for DSI's equity in certain automobiles. Pursuant to the agreement, Avcar assumed remaining payments to General Motors Acceptance Corporation (GMAC) and Ford Motor Company (Ford Motor) on the automobile loan, with DRACSI remaining liable as guarantor.

Prior to the June 15, 1984 meeting, Schroff, William Smoot, Marshall, Apton and Dr. George Derry personally guaranteed Avcar's obligations to DSI under the franchise agreement. The franchise agreement also incorporated a promissory note for $300,000 signed by Avcar's shareholders in their personal capacities.

At the time the parties executed the franchise agreement, DSI was not registered to offer or sell franchises in California, Maryland, or Virginia. As of January 1, 1984, "large franchisors" such as DSI were required to file a notice of exemption in California in order to become exempt from the registration requirements. *See* Cal.Corp.Code § 31101(e). When DSI and Avcar signed the franchise agreement, six months after the new notice of exemption requirement came into effect, DSI had not yet filed a notice of exemption in California.

At the end of the meeting of June 15, 1984, DSI gave Schroff a document entitled "FTC Disclosure Document," dated July 30, 1982. The document did not disclose that Caruso and Francis were prohibited from offering or selling franchises in California because of their previous failure to comply with the registration requirements. The document also failed to disclose the existence of five civil actions involving DSI and two 1982 Wisconsin criminal convictions for unlawful franchise sales activity,

one for DSI, and one for Dollar Rent A Car–Wisconsin, Inc., a wholly owned DRACSI subsidiary.

Avcar began its operations on or about July 1, 1984, and operated at a profit through September of 1984. By the end of 1984, however, Avcar stopped paying system fees or royalties to DSI. Avcar also did not file monthly system reports and monthly financial statements, failed to pay, or was late in paying, reservation fees, airport lease and concession fees, and third-party creditors, all in violation of the franchise agreement. Avcar did not file federal tax returns. On occasion, Avcar rented cars without having liability insurance.

DSI terminated Avcar's franchise rights in February 1986. Avcar nevertheless continued to operate under the Dollar name until June 1986, but only to receive cars previously rented during May of 1986. Despite DSI's notice of termination of the franchise agreement and demand to cease operations, Avcar refused to turn over to DSI the operating locations on all of the airport concessions.

DSI thereafter brought this action against Avcar, and guarantors Schroff, Smoot, Marshall, and Apton, for breach of the franchise agreement. DSI sought damages totalling $1,373,678.81. Avcar and the individual guarantors asserted as both affirmative defenses and as counterclaims against DSI, Caruso, and Francis: (1) rescission of the franchise agreement due to DSI's failure to comply with California Franchise Investment Law; and (2) breach of the franchise agreement by DSI for failing to provide adequate services in accordance with the agreement. Avcar requested restitution and damages.

At trial, the district court bifurcated the issues and tried the rescission claim first without a jury. After a thirteen-day bench trial, the district court rescinded the franchise agreement based on its findings and conclusions that DSI violated the California Franchise Investment Law, Cal.Corp.Code §§ 31101, 31110, and 31119, by its failure to file a notice of exemption from registration and by the inadequacies and untimeliness of the disclosures contained in the FTC Disclosure Document of 1982. The district court determined that DSI's violations were "willful" under the California Franchise Investment Act and thus Avcar was entitled to rescind the franchise agreement pursuant to § 31300.

The district court then dismissed DSI's breach of contract claim. Concluding that Avcar was not barred from recovery on its counterclaims by the unclean hands doctrine, the district court held that DSI, Caruso and Francis were jointly and severally liable to Avcar for damages and restitution in the amount of $209,729.75 under Cal.Civ. Code § 1692 (West 1985). In adjusting the equities between the parties, the district court calculated what it called "restitutionary damages" by first listing all payments made to DSI by Avcar:

| | |
|---|---|
| Cash purchase money for franchise agreement | $200,000.00 |
| Installment payments on franchise note | 29,763.80 |
| Advance last month's rent and security deposit | 30,000.00 |
| Payments on BWI improvements (7/84—12/85 @ $700/month) | 12,600.00 |
| Reservation fees | 43,199.22 |
| System fees | 155,538.47 |
| Unallocated payments | 5,827.48 |
| Supplies | 5,704.73 |
| Rent and taxes (including first month's rent) | 205,785.21 |
| Gas and S & H stamps | 26,832.00 |
| Total: | $715,250.91 |

Next, the court allowed DSI the following set-offs, for benefits conferred:

| | |
|---|---|
| Net value of fleet at time of turnover | 150,000.00 |
| Value of furniture at time of turnover | 60,000.00 |
| Rental value of BWI facility (7/84—2/86 @ $700/month) | 14,000.00 |
| Reservation arrangements | 43,199.22 |
| Supplies | 5,704.73 |
| Rent and taxes (including first month's rent) | 205,785.21 |
| Gas and S & H stamps | 26,832.00 |
| Total: | $505,521.16 |

In addition, the district court required DSI to indemnify and hold harmless Avcar and the individual guarantors for any liability to GMAC or Ford Motor arising from the assumption and guaranty agreements on the vehicles assigned to Avcar.

The district court also awarded Apton $1,335 and Avcar, Schroff, and Smoot

$298,130.73 in attorneys' fees. Following a Rule 59(e) motion by DSI, the district court amended the findings of fact and conclusions of law to include the finding that the franchise agreement contained an attorneys' fees provision permitting a fee award to a party prevailing on an action under a contract pursuant to Cal.Civ.Code § 1717 (West Supp.1989). DSI timely appealed.

DSI contends that the district court erred in: (1) deciding to try the counterclaim for rescission to the court before holding a jury trial on its contract claim; (2) applying California Franchise and Investment Law to the rescission counterclaim; (3) determining that DSI's breaches of the California Franchise and Investment law were willful; (4) refusing to apply the doctrine of unclean hands to bar Avcar's claim for rescission and restitution; (5) awarding "restitutionary damages;" (6) awarding attorneys' fees to Avcar; and (7) holding Caruso and Francis jointly and severally liable.

## DISCUSSION

### I. Bifurcation and Order of Trial

DSI contends that the district court's decision to bifurcate the trial and determine the equitable issues prior to the legal issues was an abuse of discretion and effectively denied DSI its seventh amendment right to a jury trial. This contention lacks merit.

■ To begin, DSI had no constitutional right to a jury trial on Avcar's counterclaims for rescission. The seventh amendment preserves the right to trial by jury of all legal claims. Rescission is an equitable remedy, however, for which no right to a jury exists. Therefore, the district judge acted within his authority in bifurcating the legal and equitable claims pursuant to Fed.R.Civ.P. 42, and in trying Avcar's equitable claims for rescission to the court.

■ When legal and equitable claims are joined in the same action, the trial judge has only limited discretion in determining the sequence of trial and "that discretion ... must, wherever possible, be exercised to preserve jury trial." Beacon Theatres,

Inc. v. Westover, 359 U.S. 500, 510, 79 S.Ct. 948, 956, 3 L.Ed.2d 988 (1959). "[O]nly under the most imperative circumstances ... can the right to a jury trial of legal issues be lost through prior determination of equitable claims." Id. at 510–11, 79 S.Ct. at 956–57 (citation omitted). Nevertheless, in this case the district judge did not abuse his discretion or deny DSI its seventh amendment rights by proceeding with the Avcar's equitable claims prior to determining the legal claims of DSI.

The Supreme Court has held that "where equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims." Ross v. Bernhard, 396 U.S. 531, 537–38, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970) (emphasis added). Thus, where there are issues common to both the equitable and legal claims, "the legal claims involved in the action must be determined prior to any final court determination of [the] equitable claims." Dairy Queen, Inc. v. Wood, 369 U.S. 469, 479, 82 S.Ct. 894, 900, 8 L.Ed.2d 44 (1962) (footnote omitted). Otherwise, "[p]rior non-jury trial of the equitable claims may infringe the right to jury trial on the legal claims because of the collateral estoppel or res judicata effect of a prior judicial determination of issues common to the two sets of claims." Calnetics Corp. v. Volkswagen of America, Inc., 532 F.2d 674, 690 (9th Cir.), cert. denied, 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976) (citation omitted).

Thus, DSI would be entitled to a jury trial on the issues common to both the legal and equitable claims. The equitable and legal claims asserted in this action, however, do not involve any common questions of law or fact. The issues relevant to the rescission counterclaim concern DSI's compliance with franchise law prior to the execution of the franchise agreement, while the issues relevant to the breach of contract claim relate to Avcar's subsequent performance of the franchise agreement.

Where the "legal and equitable claims asserted in a single action are entirely independent, the order of trial is immaterial, and may be left in the discretion of the court." 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2305, at 35 (1971). Accordingly, the district court did not infringe DSI's seventh amendment rights nor did it abuse its discretion when it resolved Avcar's claims for rescission prior to DSI's breach of contract claim.

## II. Application of California Franchise Law

DSI contends that the district court erred by applying California law to the rescission counterclaim because: (1) the franchise agreement provides that the law of the licensee's operating locale shall apply; and (2) California Franchise Investment Law, Cal.Corp.Code §§ 31110–31124, does not apply because the franchise was purchased by nonresidents who operated the franchise out of state. We disagree.

■ The franchise agreement provides: "[t]his agreement shall be construed in accordance with the laws of the state of the Licensee's Operating Locality." By its own terms, this "choice of law" provision governs the construction or interpretation of the franchise agreement itself. However, DSI's compliance with franchise law did not depend on the construction of the license agreement. Therefore, the franchise agreement's "choice of law" provision is inapplicable to Avcar's rescission counterclaim which alleges franchise violations.

■ DSI is also mistaken in its contention that California Franchise and Investment Law does not apply to the sale of a franchise to a nonresident franchisor who operates the franchise outside of California. Section 31300 provides: "[a]ny person who offers or sells a franchise in violation of Section 31101, 31110, 31119, 31200, or 31202, shall be liable to the franchisee ... who may sue for damages caused thereby, and if such violation is willful, the fran-

chisee may also sue for rescission...." Section 31110 provides it is unlawful "to offer or sell any franchise in this state unless the offer of the franchise has been registered ... or exempted." An offer or sale is made "in" California where "an offer to sell is made in this state, or an offer to buy is accepted in this state." Cal.Corp.Code § 31013.

It is undisputed that the franchise agreement was negotiated, executed, and the franchise fees were paid for, by Avcar in California. DSI does not dispute that these facts constitute the making of an offer to sell, or the acceptance of an offer to buy, the franchise in California. Instead, DSI relies on the exemption for out of state franchisees provided in California's Administrative Code:

There is exempted from the provisions of Chapter 2 (commencing with section 31110) of Part 2 of the Law, any offer or sale of a franchise to a resident of a foreign state, territory or country who is neither domiciled in this state to the knowledge of the seller *nor actually present in this state*, if the franchised business is not to be operated, wholly or partially, in this state, and if the sale of such franchise is not in violation of any law of the foreign state, territory or country concerned or of the United States.

Cal.Admin.Code, Title 10, § 310.100.1 (1989) (emphasis added).

DSI's reliance on the section 310.100.1 exemption is misplaced, however. The exemption applies only when the franchisee is not "present" within the state of California. In *Opinion No. 79/3F* (1979), the California Corporations Commissioner stated that execution of the agreement and payment of the franchise fee in California made the franchisee "present" so that the administrative exemption did not apply, even though execution and payment were the franchisee's only contact with California.[1] Hence, the district court was correct

---

1. DSI cites *Premier Wine & Spirits v. E. & J. Gallo Winery*, 644 F.Supp. 1431, 1439 (E.D.Cal. 1986), *aff'd*, 846 F.2d 537 (9th Cir.1988), for the proposition that California's franchise laws do

not apply extra-territorially. *Premier* is inapposite because it was decided under the California Franchise Relations Act, Bus. & Prof.Code §§ 20000–20043 (West 1987), which, unlike the

in applying California franchise law to the rescission counterclaim.

### III. "Willful" Under California Franchise Investment Law

 The district court concluded that DSI's sale of the franchise to Avcar was unlawful because: (1) DSI neither registered nor filed a notice of exemption as required by sections 31101 and 31110; (2) DSI failed to provide Avcar with a FTC disclosure document at least ten days before payment of any consideration in violation of section 31119; (3) the disclosure document did not disclose the prohibitions of the California Desist and Refrain order or that the prohibitions applied to Caruso and Francis; (4) the disclosure document did not disclose DSI's 1982 violation of Wisconsin law as required by California Reg. 310.114.1; (5) the disclosure document did not disclose the existence of five pending civil actions as required by Reg. 310.-114.1(cc)(2); and (6) the disclosure document did not contain the financial information required by Cal.Reg. 310.11.2.

Avcar had to prove that DSI's franchise violations were "willful" in order to obtain rescission and damages under Cal.Corp. Code § 31300. The district court held that " 'willful' means an *act* that is committed knowingly and intentionally. There is no requirement of a showing of an intent to violate the law, an evil motive, or a purpose to gain undue advantage. Good faith or reasonable care are not defenses to 'willfulness' under [section 31300]." *Dollar Sys., Inc.*, 673 F.Supp. at 1503. The court concluded that DSI's violations were willful because it knew it had not registered or filed an exemption and it knew what it did and did not disclose, even though it was not specifically aware of the laws which were violated in the process.

DSI contends that "willful" in the context of the California Franchise Investment Law should be defined as either knowledge of or reckless disregard for the unlawfulness of the conduct. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128, 105 S.Ct. 613, 625, 83 L.Ed.2d 523 (1985) (definition of "willful" for purposes of awarding double damages under the Age Discrimination in Employment Act). DSI argues that a "willful" violation must mean conduct done with the intent to violate the law. Under that definition, conduct which is "reasonable" and in "good faith" cannot be "willful." On that basis, DSI argues that its claimed lack of knowledge of the requirements of the California Franchise Investment Law preclude any finding of willful misconduct.

There are no California cases explicitly analyzing the requirement of "willfulness" in section 31300.[2] Analysis of the different sections of the statute, however, demonstrates that section 31300 does not require that the defendant knowingly violate the law.

Section 31300 provides that a franchisee is entitled to rescind the franchise agreement if the franchisor's violations are willful,

> unless, in the case of a violation of section 31200 or 31202, the defendant proves that the plaintiff knew the facts concerning the untruth or omission, or that the defendant exercised reasonable care and did not know, or if he had exercised reasonable care, would not have known, of the untruth or omission.

A "reasonable care" defense is thus expressly provided for violations of sections 31200 and 31202, but not for violations of sections 31101, 31110, and 31119. Accordingly, the word "willful" as it is used in section 31300 does not lend itself to a "rea-

---

California Franchise Investment Law, applies only to franchises "where either the franchisee is domiciled in this state or the franchised business is or has been operated in this state." Cal. Bus. & Prof.Code § 20015.

**2.** In *Neptune Soc. Corp. v. Longanecker*, 194 Cal.App.3d 1233, 240 Cal.Rptr. 117 (1987), a case with facts similar to those in this appeal, the court did not explicitly analyze the requirements of "willfulness," but found a violation by a defendant franchisor who, after his attorney advised against franchising because of "the paperwork," proceeded to offer franchises without registering.

sonable care" defense with respect to violations of sections 31110 and 31119.

In addition, the criminal provision of the California Franchise and Investment Law, section 31410, requires a showing of "willful" conduct before criminal penalties, including fines or imprisonment, may be imposed. Unlike the civil provisions, section 31410 also provides, as a separate defense for the penalty of imprisonment, lack of knowledge of the law. The express inclusion of a lack of knowledge defense in the criminal statute implies that "willfulness" in the civil provisions is determined aside from the question of knowledge of the law.

Similarly, in *People v. Gonda,* 138 Cal. App.3d 774, 779, 188 Cal.Rptr. 295, 297 (1982), the court interpreted section 31410 and held that "[t]he word 'wilfully' when used in the penal statutes means 'simply a purpose or willingness to commit the act or to make the omission referred to. It does not require any intent to violate the law, or to injure another, or to acquire any advantage.' (Pen.Code, § 7.)" DSI argues that *Gonda* is inapposite because it is a criminal case. It would be anomalous, however, to require a higher state of mind for a civil penalty than for a criminal penalty. If a franchisor can properly be convicted of a crime for conduct that is "willful" under the standard articulated in *Gonda,* it surely can be subject to a civil judgment for rescission pursuant to section 31300. Accordingly, we conclude that the district court applied the correct definition of "willful."

## IV. Avcar's Conduct and Unclean Hands

The district court refused to apply the doctrine of unclean hands to bar Avcar from receiving the remedy of rescission pursuant to section 31300. The court found that while Avcar's performance under the franchise agreement was grossly negligent, it did not rise to the level of misconduct necessary for the application of the unclean hands doctrine. We affirm the district court on this issue.

■ The application of the unclean hands doctrine raises primarily a question of fact. *Insurance Co. of North America v. Liberty Mutual Ins. Co.,* 128 Cal.App.3d 297, 306, 180 Cal.Rptr. 244, 250 (1982). The doctrine bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted. *See Pond v. Insurance Co. of North America,* 151 Cal.App.3d 280, 289–90, 198 Cal.Rptr. 517, 522 (1984). "It is fundamental to [the] operation of the doctrine that the alleged misconduct by the plaintiff relate directly to the transaction concerning which the complaint is made." *Arthur v. Davis,* 126 Cal.App.3d 684, 693–94, 178 Cal.Rptr. 920, 925 (1981) (quotation omitted).

■ In the instant case, Avcar's alleged misconduct (failure to perform under the franchise agreement) is unrelated to the issue of whether Avcar is entitled to rescind the franchise agreement. Avcar's misconduct occurred after the execution of the franchise agreement. Based on DSI's preceding franchise violations, the sale of the franchise was unlawful and thus Avcar had the right to rescind the franchise agreement immediately upon its execution. Therefore, any subsequent nonperformance of the franchise agreement did not affect Avcar's right to rescission. Accordingly, Avcar's rescission claim is not barred by the doctrine of unclean hands.

The district court concluded that Avcar acted negligently, and not with the purpose to defraud or injure DSI, in its performance of the franchise agreement and that this conduct did not rise to the level of "unclean hands." DSI argues that a negligent breach of contract constitutes unclean hands. DSI cites no authority for its argument that simple breach of contract merits application of the unclean hands doctrine. Bad intent is the essence of the defense of unclean hands. *Wells Fargo & Co. v. Stagecoach Properties, Inc.,* 685 F.2d 302, 308 (9th Cir.1982) (applying California law). Accordingly, the district court's conclusion that the doctrine of unclean hands was inapplicable was correct.

## V. Restitution and Damages

Although it refused to bar completely Avcar's counterclaim under the unclean hands doctrine, the district court appropriately considered Avcar's misconduct in reducing its damages pursuant to California Civil Code § 1692. Section 1692 provides in pertinent part:

A claim for damages is not inconsistent with a claim for relief based on rescission. The aggrieved party shall be awarded complete relief, including restitution of benefits, if any, conferred by him as a result of the transaction and any consequential damages to which he is entitled; but such relief shall not include duplicate or inconsistent items of recovery.

If in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties.

Given the permissive nature of the statutory language, we review the district court's "adjustment of the equities" for abuse of discretion. *See Runyan v. Pacific Air Ind., Inc.*, 2 Cal.3d 304, 318, 85 Cal.Rptr. 138, 148, 466 P.2d 682, 692 (1970) (award of consequential damages under section 1692 reviewed for reasonableness and equity).

DSI contends that the district court erred in calculating the damage award by: (1) failing to offset Avcar's award by $609,058.32, the amount DSI paid to various third parties after Avcar defaulted; (2) failing to consider Avcar's profits under the franchise; (3) failing to reduce Avcar's award by the amount of rental revenues retained after termination of the franchise agreement; and (4) ordering DSI to indemnify Avcar and the individual guarantors for any liability to GMAC or Ford Motor arising out of the vehicle assumptions. As to the first three contentions, we remand for further proceedings; we affirm as to the last contention.

*DSI's Payments to Third Parties.* The district court found that DSI paid $609,058.32, which included payments for rent, airport bonds, frequent flyer programs, property taxes, a deficiency judgment to Ford Motor, airport leasing and concession payments, reservation payments for a car wash, and auto repair payments. These were payments that DSI made to various creditors during the course of the franchise relationship. DSI was legally obligated to make these payments in the event Avcar defaulted.

The district court found that these sums were expended by DSI due to Avcar's default under the franchise agreement. Avcar directly benefited from these payments even though they were made by DSI to third party creditors. Pursuant to section 1692, the court may require the prevailing party to make any compensation that justice may require. The district court, however, after finding these sums were expended by DSI, offers no reasons why it failed to take these amounts into account in "adjusting the equities" between the parties. Therefore, we cannot determine whether or not the district court abused its discretion in denying DSI compensation for these payments. Accordingly, we remand to the district court for further findings on this issue.

*Avcar's Alleged Income.* The district court's findings of fact include a reference to a letter by Schroff indicating that Avcar was running $10 million a year through its bank account. In calculating an award pursuant to section 1692, the district court may deduct the gross income received by the franchisee during its operation of the franchise. *Runyan*, 2 Cal.3d at 319, 85 Cal. at 149, 466 P.2d at 693.

The district court concluded that Avcar's irresponsible conduct of its business under the franchise agreement precluded "it from recovering the majority [of its] consequential damages (*i.e.*, its business losses)." *Dollar Sys., Inc.*, 673 F.Supp. at 1504. Nevertheless, the court, while making the finding that Avcar ran $10 million through its bank account, refused to take Avcar's profits under the franchise agreements into

account in adjusting the "equities" between the parties. In fact, by not taking such profits into account, the court rewards rather than punishes Avcar for its misconduct under the franchise agreement. Nevertheless, because it is unclear from the record why these revenues were not considered, we remand to the district court for further findings on this issue.

*Rental Revenues.* The district court found that after the termination of the franchise agreement, Avcar continued to operate under the Dollar name until June 1986, but only to receive the cars previously rented in May 1986. The court, however, failed to offset $85,000 in car rental revenues collected and retained by Avcar during that period. Once again, the district court offers no reasons why these sums were not considered in arriving at the final damage award. Therefore, it is impossible to determine whether the trial court abused its discretion in adjusting the equities between the parties. Accordingly, we remand for further findings on this issue.

 *Indemnification for Vehicle Assumption Liability.* The district court ordered DSI to "indemnify and hold harmless Avcar and the individual guarantors for any liability to [GMAC] or [Ford Motor] arising from the assumption and guaranty agreements on the fleet in existence at the time of the turnover to Avcar." *Dollar Sys., Inc.,* 673 F.Supp. at 1505. The district court considered this "limited award of consequential damages appropriate because these guarantees were inextricably intertwined with the execution of the [rescinded] license agreement." *Id.*

Imposing liability on DSI for indemnity arising out of Avcar's assumption was a logical consequence of the rescission of both the franchise agreement and the guarantees. In addition, as part of its set-off, the district court awarded DSI the value of the equity in the cars that Avcar assumed from DSI. Accordingly, it was not an abuse of discretion that, having restored the cars to DSI, the court made DSI responsible for any remaining liability. We affirm on this issue.

## VI. Attorneys' Fees

 "In doing equity between the parties," the district court found it could not "excuse the kind of conduct evidenced by DSI's attempted fabrication of the [disclosure date]."[3] *Dollar Sys., Inc.,* 673 F.Supp. at 1504. The court concluded that this conduct justified an award of attorneys' fees to Avcar and Apton. We affirm.

A prevailing federal litigant ordinarily may not, absent statute or enforceable contract, collect attorneys' fees. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975). However, "[a] court may assess attorneys' fees 'when the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."'" *Dogherra v. Safeway Stores, Inc.,* 679 F.2d 1293, 1298 (9th Cir.), *cert. denied,* 459 U.S. 990, 103 S.Ct. 346, 74 L.Ed.2d 386 (1982) (quoting *Alyeska,* 421 U.S. at 258–59, 95 S.Ct. at 1622) (quoting *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)). " 'Bad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation.' " *Dogherra,* 679 F.2d at 1298 (quoting *Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973)).

"An award of attorneys' fees for bad faith 'is punitive and the penalty can be imposed "only in exceptional cases and for dominating reasons of justice." ' " *Id.* (quoting *United States v. Standard Oil Co.,* 603 F.2d 100, 103 (9th Cir.1979) (quoting 6 J. Moore, *Moore's Federal Practice* ¶ 54.77[2] (2d ed. 1972)). "Within these guidelines, an award of attorneys' fees is within the district court's discretion." *Id.* We review a finding of bad faith under the clearly erroneous standard. *Id.* If bad faith is found, we review the award for abuse of discretion. *Beaudry Motor Co. v.*

---

**3.** The district court found that Francis attempted to falsify the date of Avcar's receipt of the 1982 disclosure document so as to avoid liability under the California franchise disclosure laws.

*Abko Properties, Inc.*, 780 F.2d 751, 756 (9th Cir.), *cert. denied*, 479 U.S. 825, 107 S.Ct. 100, 93 L.Ed.2d 51 (1986).

The district court did not explicitly find that DSI acted in bad faith, but did state that "the Court cannot excuse the kind of conduct evidenced by DSI's attempted fabrication of the [disclosure] date." *Dollar Sys., Inc.*, 673 F.Supp. at 1504. We construe this language as a finding of bad faith, and hold that the finding is not clearly erroneous because the record contains evidence that DSI fabricated the disclosure date.

An award of attorneys' fees on that basis was not an abuse of discretion. The attempted fabrication reveals DSI's bad faith in its conduct both prior to and during the course of the litigation. We also note that the untimeliness of the disclosure was sufficient in itself to justify rescission of the franchise agreement under section 31300. Accordingly, a $299,465.73 award of attorneys' fees predicated on bad faith was not an abuse of discretion.

## VII. Liability of Caruso and Francis

 DSI contends that Caruso and Francis were unaware of those requirements of the California Franchise Investment Law that DSI violated and thus the imposition of individual liability pursuant to Cal.Corp.Code § 31302 (West 1977) was erroneous. We disagree.

Section 31302 imposes joint and several liability on "every principal executive officer or director" of a corporation found liable, and on "every employee of a person so liable who materially aids in the ... transaction constituting the violation." Such liability may be avoided only on proof that the persons lacked "knowledge of or reasonable grounds to believe in the existence of the *facts* by reason of which liability is alleged to exist." *Id.* (emphasis added). Section 31302, unlike section 31410, does not make ignorance of the law a defense.

Caruso was a DSI officer and director; Francis was a director and had responsibility for franchise sales. Both were materially involved in the sale of the franchise rights to Avcar. The record contains no evidence that either Caruso or Francis were unaware of the relevant facts. On the contrary, they were the persons at DSI who knew whether DSI had either registered or filed a notice of exemption, and who knew of the contents and presentation of the disclosure document to Avcar. Accordingly, the district court's finding that Caruso and Francis had knowledge of the facts that constituted the franchise violations is not clearly erroneous.

## VIII. Conclusion

The district court is affirmed on all issues except damages. This issue of damages is remanded for further findings. Each party is to bear its own costs on appeal.